No. 77,721

PHILLIP W. STANFIELD, *Appellant*, v. OSBORNE INDUSTRIES, INC.,
STANLEY M. THIBAULT, and RONALD THIBAULT, *Appellees*.
(949 P.2d 602)

Opinion filed December 12, 1997.

*Dorsey L. Baker*, of Lubbock, Texas, argued the cause, and *Don W. Noah*, of Noah & Harrison, P.A., of Beloit, was with him on the briefs for appellant.

*Timothy B. Mustaine*, of Foulston & Siefkin, L.L.P., of Wichita, argued the cause, and *James D. Oliver*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: The plaintiff, Phillip W. Stanfield, appeals from the trial court's granting summary judgment against him and in favor of the defendants, Osborne Industries, Inc., Stanley M. Thibault, and Ronald Thibault, based on the doctrines of issue preclusion (collateral estoppel) and claim preclusion (res judicata).

In the early 1970s, the plaintiff invented several products, including an electrically heated farrowing pad for use in the hog industry. The plaintiff consulted local businessmen in Osborne, Kansas, about his product ideas. In 1973, the businessmen formed and incorporated defendant Osborne Industries, Inc. (OII) to manufacture the heating pads and other products. OII hired defendant Stanley Thibault as president of the company. OII also hired the plaintiff about this same time. The plaintiff and OII entered into a written agreement, permitting OII to manufacture the plaintiff's farrowing pad in exchange for a royalty of the sales (1973 technology agreement).

In the early 1970s, OII manufactured farrowing pads for another company, Moorman Manufacturing Company, and labeled the pads with Moorman's name. However, OII also manufactured and

sold on its own account, with the plaintiff's acquiescence, some farrowing pads labeled with the name "Stanfield."

In April 1974, OII hired defendant Ronald Thibault, Stanley's brother, to work for the company part-time. Ronald designed a full line of farrowing pads, using a different type of material than the plaintiff's pads. In April 1975, OII hired Ronald full-time as vice president of the company. Ronald believed that OII was too dependent on Moorman, so Ronald developed a plan for OII to create its own separate markets, reputation, and identity. Ronald also concluded that, as a part of OII's move toward independence, it needed to develop and use its own trademark. Plaintiff threatened to cause a walkout of OII employees if the company adopted a trademark that did not use the word "Stanfield." In July 1975, plaintiff and OII executed a second written agreement that gave OII the right to use the word "Stanfield" on its products, even those that were not invented by the plaintiff (1975 trademark agreement). OII designed two trademarks, with at least one of them utilizing the word "Stanfield," and began using them.

In September 1975, the plaintiff quit his employment with OII due to illness and dissatisfaction with the way things were being run. Since 1975, the plaintiff's only relationship with OII has involved the lawsuits he has filed against the company.

In February 1976, the plaintiff's application for a patent on the farrowing pad was initially rejected, and the patent application rejection became final on March 31, 1978. In December 1976, after paying over $45,000 in royalties under the 1973 technology agreement, OII stopped paying the plaintiff royalties on the sale of the farrowing pads. In 1977, plaintiff filed suit against OII in Osborne County District Court to recover his unpaid and future royalties. OII claimed that it had substantially changed the design of the pad which it marketed to such an extent that no further royalties were due. The jury rejected OII's defense and rendered a verdict in favor of the plaintiff. The jury decided that OII's newly designed pad was not substantially different from the original pad designed by the plaintiff. The Court of Appeals affirmed the jury verdict. *Stanfield v. Osborne Industries, Inc.*, 7 Kan. App. 2d 416, 643 P.2d 1115 (1982). This court agreed with the jury's determination that

OII had not substantially changed the design of the farrowing pad. Nevertheless, this court reversed the judgment in favor of plaintiff for a different reason. This court held that the plaintiff was not entitled to collect royalties under the 1973 technology agreement once the plaintiff's patent application for his farrowing pad had been denied. Thus, this court only allowed the plaintiff to collect royalties for the period prior to the "ultimate rejection" of his patent application on March 31, 1978. *Stanfield v. Osborne Industries, Inc.*, 232 Kan. 197, 198, 203, 654 P.2d 917 (1982).

In March 1977, OII applied to register the "Stanfield" mark it had designed as a trademark, pursuant to the 1975 trademark agreement. In OII's application, Stanley Thibault stated that to the best of his knowledge no one else had the right to use the mark in commerce. The mark was registered with the United States Patent and Trademark Office in 1978. The trademark included the plaintiff's personal name. In 1983, after OII had used the "Stanfield" trademark for 5 years and expended approximately $400,000 on advertising and travel expenses to promote the "Stanfield" trademark, OII filed a declaration under the Lanham Act in an attempt to gain "incontestable" trademark status. See 15 U.S.C. § 1065 (1994). OII asserts that the plaintiff knew OII had registered the "Stanfield" trademark and claimed sole ownership of it. According to OII, the plaintiff became aware of these facts in 1979 or 1980 when they were revealed during the discovery proceedings of the plaintiff's first lawsuit against OII.

In 1990, the plaintiff asked OII to terminate the unlicensed use of the "Stanfield" trademark. According to the plaintiff, he owned common-law trademark rights in the surname "Stanfield," and the 1975 trademark agreement was a limited license agreement which only granted OII the right to use the "Stanfield" mark for 15 years. When the 15 years expired in 1990, the plaintiff asked OII to stop using the mark, but OII refused. Consequently, in early 1992, the plaintiff filed an action in the federal district court of Kansas to terminate the unauthorized use of his name and trademark rights. Filed under federal question jurisdiction, the petition alleged two federal Lanham Act claims and a state law claim utilizing supplemental jurisdiction. Specifically, the plaintiff's federal action in-

cluded the following three counts: Count I, a claim under the Lanham Act for false description and false association or sponsorship because OII continued to use the "Stanfield" trademark on its products after expiration of the trademark license (see 15 U.S.C. § 1125[a] [1994]); Count II, a claim under the Lanham Act for fraudulent registration of the "Stanfield" trademark by the defendants (see 15 U.S.C. § 1120 [1994]); and Count III, a claim for slander, disparagement, and misappropriation of the plaintiff's personal name due to the defendants' continued use of the Stanfield name upon expiration of the trademark license.

In response, the defendants filed a motion for summary judgment on the two federal claims and on the state law claim of misappropriation. In the motion for summary judgment, the defendants asserted three grounds: (1) that their prior registration of the mark incorporating the name Stanfield was incontestable; (2) that plaintiff's claims were time barred; and (3) that res judicata barred plaintiff's claims. In their supporting memorandum, the defendants based the defense of res judicata on the fact that the "plaintiff could have and should have raised such claims in the prior Osborne County [state] action." The defendants also added additional grounds for their summary judgment motion in the supporting memorandum, including an assertion that the plaintiff had no federal trademark rights in the "Stanfield" mark because the 1975 trademark agreement constituted a naked license in which the plaintiff abandoned any right he might have had in the trademark.

The federal district court agreed with the defendants' abandonment argument, stating: "Even assuming that the plaintiff did have some rights in the "Stanfield" trademark or tradename and that he did enter into a license agreement with OII in July 1975, the court finds that the license agreement was a naked license that worked as an abandonment of any rights plaintiff had." *Stanfield v. Osborne Industries, Inc.*, 839 F. Supp. 1499, 1504 (D. Kan. 1993). The federal court found that the 1975 agreement was a naked license, in which the plaintiff abandoned his rights in the "Stanfield" trademark, because the plaintiff failed to exercise quality control over the products which carried the trademark. The 1975 agreement did not contain a quality control provision, and the

plaintiff did not exercise actual control over the defendants' operation to ensure quality products. Further, the federal court found that the plaintiff's reliance on the defendants' quality control efforts did not fulfill the plaintiff's duty to exercise quality control over the trademark. As the federal district court stated:

"In sum, the July 1975 agreement, if construed as a license agreement, is a textbook example of a naked license. As such, it constituted an abandonment of whatever trademark rights plaintiff might then have held. The abandonment of plaintiff's alleged trademark rights disposes of his prior use claim [Count I] and his fraudulent procurement claim [Count II]." 839 F. Supp. at 1507.

The federal district court also held that the plaintiff's claims were barred by laches because of (1) the plaintiff's inexcusable delay in instituting the suit, and (2) the prejudice to the defendants resulting from such delay. The district court found the plaintiff inexcusably delayed in bringing the federal lawsuit because the plaintiff knew in 1980 that the defendants had registered the "Stanfield" trademark; however, the plaintiff did not bring the suit until 1992. Prejudice resulted to the defendants during the delay because OII expended money to promote and develop the goodwill of the trademark. According to the district court, OII "would have saved several hundred thousand dollars if plaintiff had timely pursued his claim of ownership to the 'Stanfield' trademark or tradename." 839 F. Supp. at 1507.

In the federal court, the plaintiff argued that he did not have damages and that his claims did not accrue until July 5, 1990, when the 1975 trademark agreement "expired." The federal district court found this argument meritless, stating: "The actions taken by OII in registering the 'Stanfield' marks are so inherently inconsistent with the plaintiff's licensor rights that plaintiff must act immediately to pursue claims on his trademarks." 839 F. Supp. at 1508. The federal district court found that the plaintiff should not have delayed filing his suit until the alleged expiration of the license, but should have pursued an action once he obtained knowledge of the trademark registration.

The federal district court granted summary judgment in favor of the defendants on Counts I and II of the federal lawsuit, the counts based on federal statutory law. As to Count III, the count based

on state common law, the federal district court expressly refused to exercise supplemental jurisdiction over the count. 839 F. Supp. at 1508.

The plaintiff appealed to the 10th Circuit. The 10th Circuit held that the plaintiff abandoned his rights in the "Stanfield" trademark when he signed the 1975 agreement. According to the 10th Circuit, the 1975 agreement was a naked license, as opposed to a limited license which would have permitted OII to use the "Stanfield" mark for only 15 years. *Stanfield v. Osborne Industries, Inc.*, 52 F.3d 867 (10th Cir.), *cert. denied* 516 U.S. 920 (1995).

Next, the 10th Circuit held that the plaintiff did not have standing to bring a claim under 15 U.S.C. § 1125(a) as he alleged in Count I of the federal lawsuit. The plaintiff argued that he had standing to bring this claim because he had a commercial interest in the "Stanfield" mark misused by OII. However, the 10th Circuit held that the plaintiff "abandoned any rights he may have had in the trademark under the 1975 Agreement." 52 F.3d at 873. As such, the 10th Circuit ruled that the plaintiff lacked standing to prove a § 1125 claim and that summary judgment was properly granted on this count.

Finally, the 10th Circuit held the plaintiff's second count, fraudulent registration under 15 U.S.C. § 1120, failed because the plaintiff could not produce any evidence to prove one element of the claim—that the defendants, specifically Stanley Thibault, *knew* the falsity of the trademark registration oath when he signed it. In this trademark registration oath, Stanley Thibault declared that no other person, to the best of his knowledge, had the right to use the "Stanfield" trademark in commerce. The plaintiff alleged that the 1975 trademark agreement was evidence that Stanley Thibault knew the oath was false. However, the 10th Circuit pointed out that Stanley Thibault could have reasonably believed that the plaintiff waived all his rights to the "Stanfield" trademark in that 1975 trademark agreement. As such, the trademark registration oath signed by Stanley Thibault would not have been false and there was no evidence to show that it was. Since the plaintiff failed to establish the existence of this element, which is necessary for a § 1120 claim, the 10th Circuit found summary judgment was proper

as to Count II. The 10th Circuit affirmed the district court's grant of summary judgment to the defendants on Counts I and II of the federal complaint. 52 F.3d at 874. The plaintiff sought review of the 10th Circuit's ruling in the United States Supreme Court. The United States Supreme Court denied *certiorari*.

Since the federal court declined to exercise supplemental jurisdiction over the state law claim raised in the federal lawsuit (Count III), the plaintiff filed that claim, alleging misappropriation of his name and false light, in Osborne County District Court. This appeal arises from that action.

The defendants filed a motion for summary judgment in the state court action. In their motion and supporting briefs, the defendants relied solely on the doctrine of issue preclusion (collateral estoppel) as a basis for summary judgment. After oral argument, the trial court granted defendants' motion for summary judgment. In so ruling, the trial court relied on both the doctrine of issue preclusion (collateral estoppel) and the doctrine of claim preclusion (res judicata). The journal entry provided:

"1. Defendants' motion for summary judgment is based on the doctrine of res judicata or judicial estoppel arising out of prior litigation between the same parties. This is the third case between them, and decisions in prior cases have been cited by both parties in their briefs.

"2. The issue presented to the court is solely an issue of law which may be decided on the basis of opinions in *Stanfield v. Osborne Industries, Inc., et al.*, 839 F. Supp. 1499 (D. Kan. 1993), 52 F.3d 867 (10th Cir.), *cert. denied* 116 S. Ct. 314 (1995) and the allegations of the Petition in this action.

"3. The court finds that plaintiff has had his day in court and that the doctrine of judicial estoppel and issue preclusion applies here so that this action cannot be maintained. Summary judgment should be entered for defendant."

The plaintiff timely filed a notice of appeal to the Court of Appeals. This court transferred the case to the Supreme Court pursuant to K.S.A. 20-3018(c).

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought." *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260, 891 P.2d 435 (1995). "Summary judgment is proper where the only question or questions presented are ques-

tions of law. [Citation omitted.]" *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993).

Whether the doctrine of issue preclusion or claim preclusion applies in a certain situation is a question of law. An appellate court may analyze the question using unlimited de novo review. See *City of Manhattan v. Huncovsky*, 22 Kan. App. 2d 189, 190-91, 913 P.2d 227, *rev. denied* 260 Kan. 928 (1996) (citing *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690-92, 751 P.2d 122 [1988]).

All parties agree that "[s]tate courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law." *Heck v. Humphrey*, 512 U.S. 477, 488 n.9, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994); see Restatement (Second) of Judgments § 87 (1980). Thus, while Kansas law does not appear to differ significantly from the federal law regarding the preclusion doctrines, the controlling authority in this case is federal law. See Restatement (Second) of Judgments § 87, Comment *a* , p. 315 ("[T]here [is] little difference in the doctrine of res judicata as expounded in state and federal courts . . . so that it is usually a moot question whether the effect of a federal judgment is determined by federal law or state law.").

The United States Supreme Court has discussed the general principles of issue and claim preclusion in *Allen v. McCurry*, 449 U.S. 90, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980):

"The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. Under res judicata [or claim preclusion], a final judgment on the merits of an action precludes the parties or their privies from relitigating issues [or claims] that were or could have been raised in that action. *Cromwell v. County of Sac*, 94 U.S. 351, 352. Under collateral estoppel [or issue preclusion], once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Montana v. United States*, 440 U.S. 147, 153." 449 U.S. at 94.

"The general principle announced in numerous cases [regarding issue preclusion] is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so

determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them." *Southern Pacific Railr'd v. United States*, 168 U.S. 1, 48-49, 42 L. Ed. 355, 18 S. Ct. 18 (1897).

The doctrine of issue preclusion prevents the plaintiff from relitigating in the present lawsuit any fact or legal issue actually resolved against him in the previous federal lawsuit and necessary to the final judgment in that lawsuit. See Restatement (Second) of Judgments § 27 (1980) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

"The general rule of *res judicata* [or claim preclusion] applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' [Citation omitted.]" *Commissioner v. Sunnen*, 333 U.S. 591, 597, 92 L. Ed. 898, 68 St. Ct. 715 (1948).

The doctrine of res judicata (or claim preclusion) prohibits a party from asserting in a second lawsuit any matter that might have been asserted in the first lawsuit. *Prospero Associates v. Burroughs Corp.*, 714 F.2d 1022, 1025 (10th Cir. 1983). In order for the doctrine of claim preclusion to apply, three factors must be present: " '(1) the first suit must have proceeded to final judgments on the merits; (2) the parties must be identical or in privity; and (3) the suits must be based on the same cause of action [or claim].' " *Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1236 (10th Cir.), *cert. denied*

506 U.S. 832 (1992). This case can be decided under the doctrine of claim preclusion using these three factors.

According to the plaintiff, claim preclusion has no applicability to this case because the claims he raises in this state court action are not the same claims which the federal court previously resolved. Instead, the plaintiff argues, the federal court resolved federal trademark claims based on the Lanham Act, while this state court action involves state common-law claims of misappropriation and false light, based on the Restatement (Second) of Torts. The plaintiff asserts that these state law privacy claims, based on Restatement (Second) of Torts §§ 652C and 652E (1976), are very different claims than the federal trademark claims decided under the Lanham Act.

In support of this contention, the plaintiff cites to the sources upon which each claim is based, pointing out the distinctions in the claims raised. For instance, in federal court the plaintiff brought two trademark claims based on the Lanham Act. One claim was premised on a violation of 15 U.S.C. § 1125, which provides:

"(a) **Civil action**

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

The plaintiff's second trademark claim, which was resolved against him in federal court, was premised on a violation of 15 U.S.C. § 1120, which provides:

"Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

In this state court action, the plaintiff brings two invasion of privacy claims based on Restatement (Second) of Torts. The first

claim, misappropriation of one's name or likeness, is premised on the elements set out in Restatement (Second) of Torts § 652C, which provides: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."

The second claim the plaintiff brings in state court, publicity placing a person in false light, is premised on the elements set out in Restatement (Second) of Torts § 652E, which provides:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

"(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

"(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

In support of his position, the plaintiff cites to several federal cases which have recognized the distinction between federal trademark claims and state privacy claims. For instance, in *U. of Notre Dame Du Lac v. J.C. Gourmet Food*, 703 F.2d 1372, 1376 (Fed. Cir. 1983), the court stated:

"Our review of case law discloses that the elements of a claim of invasion of one's privacy have emerged as distinctly different from those of trademark or trade name infringement. There may be no likelihood of such confusion as to the source of goods even under a theory of 'sponsorship' or 'endorsement,' and, nevertheless, one's right of privacy, or the related right of publicity, may be violated."

Further, in *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996), the court separately discussed a Lanham Act claim and a state invasion of privacy claim, citing different elements of proof for each claim. As the plaintiff points out, not a single element of proof for the Lanham Act claim corresponded to a single element of proof for the California state common-law and statutory misappropriation claim. In *Abdul-Jabbar*, the plaintiff was permitted to pursue both types of claims. Moreover, other courts have permitted a plaintiff who lost a Lanham Act claim, based on a violation of 15 U.S.C. § 1125, to continue to pursue a state misappropriation claim. *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831 (6th Cir. 1983) (court affirmed dismissal of the

§ 1125 claim but found Johnny Carson's identity had been misappropriated). Based on these cases, the plaintiff argues that the privacy claims he seeks to litigate in this state court action are different than the Lanham Act claims which were resolved against him in federal court. As such, the plaintiff asserts that the doctrine of claim preclusion does not apply herein and should not prevent the litigation of his state claims in this state court action.

Under the doctrine of claim preclusion, if a court of competent jurisdiction has entered into a final judgment on a claim, then the parties are bound to every matter determined by the judge, and to any other admissible matter which might have been offered for that purpose. *Sunnen*, 333 U.S. at 597. As previously stated, in order for the doctrine of claim preclusion to apply, three factors must be present: " '(1) the first suit must have proceeded to final judgments on the merits; (2) the parties must be identical or in privity; and (3) the suits must be based on the same cause of action [or claim].' " *Clark*, 953 F.2d at 1236. Each of these factors is applied to this case below.

Under the first factor, the plaintiff's federal suit did proceed to a final judgment on the merits because the federal court granted summary judgment to the defendants. Federal courts treat a summary judgment as a judgment on the merits. 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4444 (1981) ("Both claim preclusion and issue preclusion [can] result from summary judgments that rest on the lack of any genuine issue of material fact going to the merits of [the] claim or defense."). Under the second factor, the parties in the federal suit—Phillip Stanfield, OII, Stanley Thibault, and Ronald Thibault—are identical to the parties in this state court action. Finally, under the third factor, the question is whether this state lawsuit is based on the same cause of action or claim addressed in the federal lawsuit. The analysis of this factor is more difficult than the analysis required for the first and second factors.

The purpose behind claim preclusion is judicial economy. *Sunnen*, 333 U.S. at 597. Thus, to fulfill this purpose, claim preclusion prohibits a plaintiff, who has several different legal theories or "claims" under which to sue, from bringing successive suits based

on each individual theory or "claim." Since claim preclusion only prohibits the relitigation of the same "claim," it is necessary to redefine the term "claim" so as to include separate legal theories based on the same facts that could have been brought in the same action.

The current meaning of the term "claim," within the context of claim preclusion, is defined in factual terms so that the same factual "transactions" or "series of connected transactions" is one claim, regardless of the number of substantive legal theories that may be available to the plaintiff based on those facts. The Comments to Restatement (Second) of Judgments §§ 24 and 25 (1980) elaborate further on what constitutes a "claim" or "transaction":

> "In general, [claim] connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held precluded." Restatement (Second) of Judgments § 24, Comment *b*, p. 199.

> "In the more complicated case where one act causes a number of harms to, or invades a number of different interests of the same person, there is still but one transaction; a judgment based on the act usually prevents the person from maintaining another action for any of the harms not sued for in the first action." Restatement (Second) of Judgments § 24, Comment *c*.

> "Having been defeated on the merits in one action, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim when the new premise or ground is related to the same transaction or series of transactions, and accordingly the second action should be held barred." Restatement (Second) of Judgments § 25, Comment *d*.

See *Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1236-37 (10th Cir.), *cert. denied* 506 U.S. 832 (1992); see also *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1274 (10th Cir. 1989) ("We have adopted the transactional approach of the Restatement [Second] of Judgments . . . to determine what is a single 'cause of action.' ").

Using this definition, the question under the third factor of claim preclusion is whether the plaintiff's current lawsuit in state court for misappropriation and false light arises out of the same "transaction" as his lawsuit in federal court for Lanham Act violations. Here, both actions arise out of a common nucleus of operative fact—the defendants' labeling of certain products with the term "Stanfield" after 1990. The facts needed to prove all of the legal theories raised by the plaintiff are related in time—after 1990—and in origin—they are all acts of the defendants. The witnesses and proof required in this state action would tend to overlap the witnesses and proof which would have been utilized in the federal action, had the federal court not granted summary judgment to the defendants. In fact, each allegation stated in the state court petition is almost identical to each allegation stated in the federal court complaint. Thus, the facts alleged in the federal court action are so interwoven with the facts alleged in this state court action that the facts constitute a single transaction or "claim." Even though the defendants' alleged acts invaded several of the plaintiff's interests under several different legal theories, there is still but one transaction or "claim."

A judgment has previously been determined on this "claim" in federal court against the plaintiff. Having been defeated on the merits in federal court, the plaintiff attempts to bring another action in state court utilizing a different legal theory. Despite the differences in legal theories, this state lawsuit does not raise a new "claim." Thus, this second action in state court is based on a "claim" which has been previously litigated in a competent federal court adverse to the plaintiff. As such, all three factors of claim preclusion are satisfied, and this state court action is barred by that doctrine. The next questions is whether there are any exceptions to prevent this preclusion.

Since the federal court and state court actions address the same "claim" or "factual transaction," the federal court's determination of the claim against the plaintiff precludes the plaintiff from relitigating the same claim in this state court action. However, the plaintiff argues that an exception to claim preclusion applies in this case because the federal court did not have the power to rule on

his state law legal theories at issue, even though he pled them in the federal action as part of a single claim. The plaintiff points out that the federal court refused to decide the state law legal theories (Count III of the federal complaint) because the federal court granted summary judgment against the plaintiff on his two counts of Lanham Act violations. Since the federal court no longer had any federal issues to determine, it refused to exercise supplemental jurisdiction over the remaining state law legal theories or rule on them. These state law legal theories, based on misappropriation and false light, are the theories which the plaintiff now raises in this state court action. Since the federal court did not decide these state law legal theories, the plaintiff asserts that the federal court's determination of the single "claim," based on other legal theories, should not preclude the plaintiff from relitigating the same "claim," under different legal theories, in state court.

In *Mattson v. City of Costa Mesa*, 106 Cal. App. 3d 441, 164 Cal. Rptr. 913 (1980), the plaintiff brought an action in federal court based on a federal law theory—violation of the plaintiff's civil rights—and based on a state law theory—negligence. The federal court declined to take pendent jurisdiction over the state law theory. After trial, the federal court determined the federal law theory adverse to the plaintiff. The plaintiff then filed a second lawsuit, in state court, alleging the state law theory of negligence. The plaintiff argued that claim preclusion did not apply, even though the legal theory in the second lawsuit arose out of the same "claim" determined in the first lawsuit, because he attempted to have the federal court exercise pendent jurisdiction over the state law legal theory, but it refused to do so. Thus, the plaintiff argued that his state law legal theory, raised in the state court action, was not barred by the federal court's previous judgment on the same "claim." The *Mattson* court rejected this argument, finding that the plaintiff's second action in state court, involving different legal theories but based on the same "claim" as the prior federal action, was barred by claim preclusion. In so holding, the *Mattson* court stated:

"A contrary rule would invite manipulation. It would permit a plaintiff half-heartedly to request the federal court to exercise pendent jurisdiction, offer little

resistance to any argument by the defendant against its exercise, and hope that the federal court would decline to exercise pendent jurisdiction and therefore reserve the plaintiff a second chance to prevail in a state court action . . . . Judicious utilization of judicial and litigant resources become ever more essential in the wake of the law explosion. The efficient administration of justice would not be advanced by a rule resulting in or encouraging multiple litigation of a single cause of action." 106 Cal. App. 3d at 455.

We agree with the *Mattson* court. Claim preclusion prohibits a party from asserting in a second lawsuit any matter that might have been asserted in the first lawsuit. *Prospero*, 714 F. 2d at 1025. Thus, a legal theory does not even need to be raised in the first action, more or less considered by the court, in order for it to be precluded in a later action under the claim preclusion doctrine, if it arose out of the same claim or factual transaction which the first action determined. See Restatement (Second) of Judgments §§ 17, 27 (1980). The fact that the federal court did not consider the plaintiff's state law theories does not prevent claim preclusion from applying to the theories, since the theories arose out of the same claim or factual transaction which the federal court did determine. We hold that the federal case gives the defendants the right to use the "Stanfield" trademark and that claim preclusion prevents the plaintiff from proceeding with this state case. This makes the remaining issues moot. We have examined the plaintiff's other arguments and find them to be without merit. The trial court properly granted summary judgment against the plaintiff.

Affirmed.

LOCKETT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned.