**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

TRI-STATE TRUCK INSURANCE,
LTD.; TST, LTD.; ANDREW B.
AUDET,

             Plaintiffs-Appellants,

v.

FIRST NATIONAL BANK OF
WAMEGO,

             Defendant-Appellee.

No. 13-3097
(D.C. No. 2:12-CV-02291-KHV-KMH)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **KELLY**, **ANDERSON**, and **MATHESON**, Circuit Judges.

_____

Plaintiffs Tri-State Truck Insurance, TST, and Andrew B. Audet ("Plaintiffs")

appeal from dismissal of their complaint on res judicata grounds.  Exercising

jurisdiction over this diversity case under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

### A. *The Loans and UCC Filings*

Mr. Audet is the chairman, chief executive officer, and sole stockholder of Tri-State and TST. In June 2006, Aleritas (previously known as Brooke Credit Corporation ("BCC")), loaned Tri-State $8,216,000 (Loan No. 5483). Mr. Audet guaranteed the loan. On the same day, Aleritas loaned Mr. Audet $436,000 (Loan No. 5484). Also on that day, other lenders agreed with Aleritas to purchase participating interests in the loans. Defendant First National Bank of Wamego ("FNBW") purchased a participating interest of 8.52 percent in Loan No. 5483.

Shortly thereafter, Aleritas filed a UCC financing statement in Kansas giving notice of its secured interest in Tri-State's collateral. Aleritas also filed UCC financing statements in Pennsylvania and North Dakota giving notice of its secured interests in the collateral of Tri-State and Mr. Audet.

In 2007, Mr. Audet pledged TST stock to secure his indebtedness to Aleritas. Aleritas filed UCC financing statement amendments adding TST as a debtor in Kansas, North Dakota, and Pennsylvania.

Aleritas administered Loan Nos. 5483 and 5484 until mid-September 2008, when it experienced financial difficulties and discontinued normal business operations. It assigned FNBW the payment processing and loan administration duties for both loans. Aleritas advised Plaintiffs of FNBW's duties but said it had not transferred or sold the loans.

In May, June, and July 2009, FNBW filed amendments to the UCC financing statements in Kansas, Pennsylvania, and North Dakota that purported to change the secured party of record from Aleritas to FNBW. The Kansas amendment listed BCC as the "[a]uthorizing party" and indicated that all collateral had been assigned to FNBW. Aplt. App., Vol. I at 31. The Pennsylvania amendments listed BCC dba Aleritas as the secured party of record that was "authorizing" the amendments and indicated a full assignment of collateral to FNBW. *Id*. at 24-25. The North Dakota amendments listed BCC as the secured party of record that was "authorizing" the amendments and indicated a full assignment of collateral to FNBW. *Id*. at 42-44.

B. *The Litigation*

In September 2009, Plaintiffs sued Aleritas and Brooke Capital Advisors ("BCA")[1] in Pennsylvania state court, claiming breach of contract, fraudulent inducement, and negligent misrepresentation arising out of the initial loan agreements between Aleritas and Plaintiffs. Aleritas and BCA did not appear. The court entered a default judgment for the Plaintiffs. It awarded damages and rescinded the loans and all loan documents of any kind, including the UCC statements.

In December 2009, after the Pennsylvania judgment, Plaintiffs sued FNBW in Kansas federal district court ("*Tri-State I*"). Based on the rescission of their loan agreements with Aleritas, Plaintiffs asked the court to declare that (1) they owed no further obligations to FNBW or any other participating lender; (2) all security in

_____

[1] Aleritas and BCC were subsidiaries of BCA.

FNBW's possession or control be returned to Plaintiffs; and (3) all UCC filings be cancelled or terminated. FNBW counterclaimed for breach of contract and declaratory judgment. In August 2011, the district court granted summary judgment for Plaintiffs and against FNBW.[2]

In May 2012, Plaintiffs again sued FNBW in Kansas federal district court ("*Tri-State II*"), asserting UCC violations, injurious falsehood, and slander of title—all based on Plaintiffs' allegations that FNBW falsely represented BCC authorized the amendments to the UCC filing statements in Kansas, Pennsylvania, and North Dakota.

FNBW moved to dismiss, arguing res judicata barred the *Tri-State II* claims because Plaintiffs could and should have asserted them in *Tri-State I*. The district court agreed. Alternatively, the district court found that Plaintiffs should have asserted these claims as compulsory counterclaims to FNBW's counterclaims in *Tri-State I*. Plaintiffs now appeal.

---

[2] In August 2013, this court affirmed summary judgment in favor of Plaintiffs on Loan No. 5484, but reversed the judgment in their favor on Loan No. 5483 and remanded the case to the district court. *See Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego, Kan.*, 535 F. App'x 653, 662 (10th Cir. 2013). On March 18, 2014, the district court entered judgment in favor of FNBW on the remanded claim.

## II. **DISCUSSION**

### A. *Standard and Scope of Review, Res Judicata Law*

We review de novo the district court's conclusion that res judicata bars Plaintiffs' claims. *See Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1100 (10th Cir. 2007). We limit our review of FNBW's motion to dismiss to the complaint's allegations, its exhibits, and the *Tri-State I* record. The district court properly took judicial notice of the latter. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

FNBW bears the factual burden on the res judicata affirmative defense. *See Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997). "Generally res judicata is an affirmative defense to be pleaded in the defendant's answer. However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (citation omitted).

As for the applicable law,

[w]ithin the res judicata framework, this court applies federal law to determine the effect of a previous federal judgment, even if that judgment was issued in a case based on diversity jurisdiction. However, the best federal rule for the claim-preclusive effect of a federal diversity judgment is to adopt the law that would be applied by state courts in the State in which the federal diversity court sits.

*Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp*., 296 F.3d 982, 986 (10th Cir. 2002) (citation and internal quotation marks omitted). Kansas law therefore guides our res judicata analysis.

The parties advance two versions of the test to determine whether a claim brought in a later action should be precluded under Kansas law. FNBW's test is: "'(1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits.'" *State v. Martin*, 279 P.3d 704, 706 (Kan. 2012) (quoting *Winston v. State Dep't of Soc. & Rehab. Servs.*, 49 P.3d 1274, 1285 (Kan. 2002)), *cert. denied*, 134 S. Ct. 114 (2013). Plaintiffs' test is: "'(1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of persons for or against whom claim is made.'" *Venters v. Sellers*, 261 P.3d 538, 546 (Kan. 2011) (quoting *Waterview Resolution Corp. v. Allen*, 58 P.3d 1284, 1290 (Kan. 2002)).

The district court found no "Kansas cases discussing, analyzing or even acknowledging the fact that courts sometimes articulate the test differently," Aplt. App., Vol. I at 107 n.25, and neither have we. The district court ultimately chose to employ FNBW's test, agreeing with the Kansas Supreme Court that this version is "'[m]ost plainly stated.'" *Id*. (quoting *In re Fleet*, 272 P.3d 583, 589 (Kan. 2012)). Although Plaintiffs contend this use of the "same claim" test "failed to observe the nuances of claim preclusion law in Kansas," Aplt. Br. at 13, both tests come from

Kansas Supreme Court decisions, and Plaintiffs have not offered case authority to show its test is more appropriate.

We see little or no substantive difference between the tests and agree with the district court's decision to use the more plainly stated one. We note that although Plaintiffs' version appears to be missing two elements contained in FNBW's—whether the claim could have been raised before and whether there was a final judgment on the merits—both have been expressed as part of the res judicata analysis in Kansas cases employing Plaintiffs' version. *See*, *e.g.*, *Venters*, 261 P.3d at 546 ("In addition, res judicata requires a prior final judgment on the merits." (internal quotation marks omitted)); *Dexter v. Brake*, 269 P.3d 846, 852-53 (Kan. App. 2012) ("The doctrine of res judicata (or claim preclusion) prohibits a party from asserting in a second lawsuit any matter that might have been asserted in the first lawsuit." (internal quotation marks omitted)).

### B. *Contested Res Judicata Elements*

The parties contest two res judicata elements: (1) whether the *Tri-State II* claims are the same as the *Tri-State I* claims, and (2) whether the *Tri-State II* claims could have been raised in *Tri-State I*.

### 1. **Same Claim under the Transactional Approach**

a. *Relying on the transactional approach*

The district court used the transactional approach from the Restatement (Second) of Judgments to conclude that "the term 'claim' connotes a natural grouping

or common nucleus of operative facts that are woven together as to constitute a single claim."[3] Aplt. App., Vol. 1 at 108. It determined this case concerns the same claims or causes of action as the *Tri-State I* case because they arose from the same transactions. Plaintiffs argue the district court erred because Kansas has not adopted the transactional approach.

Kansas has not expressly adopted or rejected the transactional approach, but this court has recognized that Kansas courts have made statements approving of it. *See Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 360-61 (10th Cir. 1996). Although they have not always explicitly referred to the doctrine, Kansas courts have employed it. *See*, *e.g.*, *O'Keefe v. Merrill Lynch & Co.*, 84 P.3d 613, 618-19 (Kan. Ct. App. 2004) (concluding that same claim was raised in second suit because it arose out of same operative facts as first suit, even though claims were based on different legal theories arising out of those facts). Based on the foregoing, we conclude the district court did not err.

_____

[3] The Restatement (Second) of Judgments § 24 (1982) explains:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Under the transactional approach, a claim "is defined in factual terms so that the same factual 'transactions' or 'series of connected transactions' constitute a claim, regardless of the number of substantive legal theories that may be available to the plaintiff based on those facts." *Stanfield v. Osborne Indus.*, *Inc.*, 949 P.2d 602, 611 (Kan. 1997). When looking at "whether the facts are so woven together as to constitute a single claim," courts should consider "their relatedness in time, space, origin, or motivation, and whether taken together, they form a convenient unit for trial purposes." *Id.* (internal quotation marks omitted).

  b. *Applying the transactional approach*

The district court said the Plaintiffs' *Tri-State II* claims were "directly connected to their claims in *Tri-State I*." Aplt. App., Vol. I at 108. It explained the Plaintiffs in *Tri-State II* sought damages from the filing of false UCC amendments related to Loans 5483 and 5484, and they sought in *Tri-State I* the cancellation of all UCC filings associated with those same loans. "In other words, in *Tri-State I*, plaintiffs sought to cancel or terminate the same UCC amendments for which they now seek damages." *Id.* at 109.

Plaintiffs argue the claims in the two cases are different because no facts or legal issues about the amendments were developed or presented in *Tri-State I*. Moreover, they contend the facts were different because the *Tri-State II* claims involve alleged misrepresentations by FNBW when it filed the UCC amendments and no such allegations were made in *Tri-State I*. But, as the district court recognized,

- 9 -

the litigation in *Tri-State I* and *Tri-State II* "involve[d] the same series of factual transactions: the underlying loans, [FNBW's] involvement as participating lender in the loans, Aleritas's assignment of loan administration duties to [FNBW] and the scope of [FNBW's] rights and interests in the loans." *Id*.

In *Tri-State I*, the Plaintiffs sought a declaration they had no obligations to FNBW under their loan agreements with Aleritas because the Pennsylvania court had rescinded those agreements. They sought to cancel any UCC amendments related to those loans. FNBW counterclaimed for breach of contract, arguing Aleritas had assigned all of its rights and duties under the loans to FNBW in September 2008 as part of the loan servicing assignment agreement. FNBW therefore asserted it had standing to enforce the terms of the loans against Plaintiffs. In *Tri-State II*, Plaintiffs argued FNBW lacked authority to amend the UCC filings to name FNBW as the secured party in place of Aleritas.

A common question in both actions was the scope of FNBW's interests in the loans. *Tri-State I* focused on whether the assignment of loan-servicing duties included all of Aleritas' rights under the loans, thereby giving FNBW standing to enforce the loans. As the district court noted, "[i]ntrinsically related" to that issue was "whether [the scope of the assignment] included an assignment of Aleritas's secured interests under the loans," and "[t]he resolution of that issue is directly related to whether [FNBW] made false statements in the UCC filings." *Id*. at 109-10. The court therefore concluded that "[o]n this record, . . . substantial overlap exists

between the facts in [*Tri-State II*] and the facts in *Tri-State I* such that they would form a convenient unit for trial purposes." *Id*. at 110. We agree with the district court's analysis and its determination under the transactional approach that *Tri-State II* and *Tri-State I* involved the same claim for res judicata purposes.

## 2. **Claims Could Have Been Raised in Prior Action**

The district court also determined Plaintiffs could have alleged their *Tri-State II* claims in *Tri-State I*. It noted the amendments to the UCC filing statements were filed months before Plaintiffs filed their *Tri-State I* complaint. The court found persuasive FNBW's argument that Plaintiffs must have known about the UCC filings that substituted FNBW as the secured party of record because Plaintiffs otherwise would have had no need to ask the *Tri-State I* court to cancel those filings. The district court also concluded that Plaintiffs had constructive knowledge of the filings because they were matters of public record. It therefore determined "the facts on their face suggest that plaintiffs could have filed the claims in *Tri-State I*." *Id*. at 113.

We agree Plaintiffs had actual or constructive knowledge of the UCC amendments before they filed *Tri-State I*. They should at least be charged with constructive knowledge because the UCC filings were public records. Moreover, Plaintiffs should have learned of them when preparing their *Tri-State I* request to cancel or terminate the filings. As the Seventh Circuit has explained, "[w]hen a litigant files a lawsuit, the courts have a right to presume that he has done his legal

and factual homework.  It would undermine the basic policies protected by the doctrine of res judicata to permit the appellants to once again avail themselves of judicial time and energy while another litigant, who has yet to be heard even once, waits in line behind them."  *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 596 (7th Cir. 1986).

Considering Plaintiffs' knowledge of the UCC amendments along with other facts in the record, we conclude a reasonable commercial borrower exercising due diligence should have discovered the *Tri-State II* claims and alleged them in *Tri-State I.  See*, *e.g., Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491 (D.C. Cir. 2009) (concluding that plaintiff's claims were barred because it "would have discovered the specifics of each of the two claims, had it acted with due diligence"); *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 88 (2d Cir. 1999) (noting that facts and events arose prior to the filing of the original complaint and that "claim preclusion applies unless the facts . . . could not have been discovered earlier through plaintiff's due diligence"); *Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863, 867 (9th Cir. 1995) ("[R]es judicata applies to every point which properly belonged to the subject of the litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time") (internal quotation marks omitted)).

We reach this result by comparing FNBW's role in September 2008 with the portrayal of its role in the 2009 UCC amendments.  In September 2008, Aleritas and

FNBW sent a letter to Plaintiffs stating that "payment servicing of your loans (#5483 and #5484) is transferred to" FNBW but that the "loans have not been transferred or sold by Aleritas." Aplt. App., Vol. II at 184. By July 2009, FNBW had amended all of the relevant UCC filings to show it had replaced Aleritas as the secured party in interest on the loans and that Aleritas had authorized this change. FNBW's transformed role—from mere servicer of the loans in September 2008 to the secured party on the loans in July 2009—should have prompted the Plaintiffs to ask Aleritas for an explanation. This in turn should have led them to discover whether the statements in the amendments were untrue, as Plaintiffs now allege. Although FNBW does not fully develop this argument in its brief, we may affirm on any ground supported by the record, *see Bolden v. PRC Inc.*, 43 F.3d 545, 548 (10th Cir. 1994).

We recognize what a plaintiff should have known often is a factual question for a jury. *See Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248, 252 (10th Cir. 1994). But "if the essential facts are undisputed and allow only one conclusion"—in this case, that Plaintiffs knew or should have known whether FNBW made misrepresentations in the UCC amendments—then judgment in favor of FNBW is proper. *Id*. We agree with the district court that Plaintiffs could have brought their claims in *Tri-State I*.

D. *Declaratory Judgment Exception*

Plaintiffs also assert the district court erred in not applying the declaratory judgment exception to res judicata. Under this exception, "the preclusive effect of a declaratory judgment action applies only to the 'matters declared' and to 'any issues actually litigated . . . and determined in the action.'" *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010) (quoting Restatement (Second) of Judgments § 33). Kansas courts have not recognized this exception, but it would otherwise not apply to this case.

The declaratory judgment exception applies "when the prior action involved *only* a request for declaratory relief." *Id*. (internal quotation marks omitted). If any party seeks coercive relief—whether in a claim or counterclaim—then the declaratory judgment exception does not apply. *See id*. (refusing to apply the declaratory judgment exception where plaintiff sought only declaratory relief but defendant had filed counterclaim for coercive relief).

In *Tri-State I*, FNBW and Plaintiffs each sought coercive relief. FNBW asserted a claim for breach of contract and sought damages. Although Plaintiffs say they asked only for declaratory relief, the district court ordered FNBW to return any security to Plaintiffs and to cancel or terminate the UCC filings, which constituted injunctive, not declaratory relief. As we have explained, "this court defines injunctive relief as all equitable decrees compelling obedience under the threat of contempt." *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1222 (10th Cir. 2009)

- 14 -

(internal quotation marks omitted).  Whether or not the district court in *Tri-State I* considered the relief to have been injunctive, we must look to the substance of the underlying order.  *See id*.

Plaintiffs' post-judgment conduct demonstrates they considered the relief to be injunctive.  Several weeks after judgment was entered in *Tri-State I*, Plaintiffs' counsel wrote a letter to FNBW stating that FNBW had not "complied with the Court's Order" because no security documents had been returned and the UCC filings had not been cancelled.  Aplt. App, Vol. II at 286.  The letter directed FNBW to return all security documents described in the court's mandate and to confirm that all UCC filings referenced in the mandate had been canceled or terminated by a date certain.  The letter further stated that "[f]ailure to comply with the Court's mandates will require us to file a motion seeking a further order of the Court finding FNBW to be in contempt."  *Id.*

Because the court's order compelled FNBW to take action under the threat of contempt, it provided injunctive or coercive relief.  The declaratory judgment exception is therefore inapplicable.  *See, e.g., Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 164 (4th Cir. 2008) ("By asking for coercive relief (the injunction) in the first suit, the plaintiff lost the right to invoke the declaratory judgment exception." (internal quotation marks omitted)).

## III. **CONCLUSION**

For the foregoing reasons, we conclude res judicata bars Plaintiffs' claims in *Tri-State II* and the declaratory judgment exception is not applicable.[4] We therefore affirm the district court's judgment.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge

---

[4] Given our holding, we need not reach the district court's alternative ruling that Fed. R. Civ. P. 13(a) required Plaintiffs to assert their *Tri-State II* claims in response to FNBW's counterclaims in *Tri-State I*.