No. 34,068

BLACK, SIVALLS & BRYSON, INC., *Appellee*, v. O. J. CONNELL, *Appellant.*

(86 P. 2d 545)

Opinion filed January 28, 1939.

*J. B. McKay,* of El Dorado, for the appellant.
*Lu Rodgers,* of El Dorado, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Defendant has appealed from an order of the court overruling his demurrer to plaintiff's petition, which attempted to state a cause of action against him personally, upon a promissory note payable to plaintiff, an Oklahoma corporation, and signed "Connell Oil Co., by O. J. Connell, Pres."

It was alleged in the petition in substance that for a long time prior to December 31, 1929, there existed in Butler county a Kansas corporation, The Connell Oil Company, of which the defendant was president and one of the principal stockholders, which corporation became indebted to plaintiff upon a promissory note; that on December 31, 1929, the charter of the Connell Oil Company was duly forfeited by the state charter board for the failure of the corporation to file its annual report and to pay its state license fee; that on December 5, 1930, defendant wrote plaintiff on the stationery of the Connell Oil Company:

"We have notice from the Citizens State Bank that they have for collection note given you by the Connell Oil Company, due December 9, 1930.

"We would like for you to recall the note and send us renewal for signature, and if you will be kind enough to add the interest to it, we would appreciate it very much. We are not in a position at this time to make a payment on the principal, and if you will make renewal for ninety days to include both principal and interest we will try at that time to do something. . . .

(Signed)  O. J. CONNELL."

It was further alleged that defendant did not notify plaintiff that the charter of the Connell Oil Company had been forfeited and that plaintiff, pursuant to the request and relying upon the promise made in the letter, surrendered the old note and accepted in lieu thereof a new note, being the one sued upon here, the pertinent portions of which read:

"$584.46                                    BARTLESVILLE, OKLA., December 9, 1930.

"Ninety days after date, for value received, I, we, or either of us, promises to pay to the order of BLACK, SIVALLS & BRYSON, Inc., five hundred eighty-four and 46/100 dollars, at the . . . with interest from date until paid, payable annually at the rate of eight percent per annum. . . .

CONNELL OIL CO.,
By O. J. CONNELL, *Pres."*

It was alleged plaintiff was ignorant of the forfeiture of the charter and that the corporation had ceased to exist before the note sued upon was executed, and first learned those facts in November, 1935, but that defendant well knew the charter of the corporation had been forfeited at the time of the execution of the note sued upon and signed the same knowing that the corporation had no right to execute the same, and that by doing so defendant became personally liable on the note. It was further alleged that plaintiff was the owner and holder of the note, and that the same was past due and unpaid. The prayer was for a personal judgment against the defendant for the amount due upon the note.

Counsel advise us that the trial court's ruling was predicated upon the view, first, that Connell was not authorized to execute a note in the name of the corporation after its charter was forfeited; and, second, having executed the note without such authority he became personally liable thereon by virtue of our statute (G. S. 1935, 52-220). We discuss these points in the order stated.

Generally speaking, under the rules of the common law, upon expiration or forfeiture of the charter of a corporation, its real property reverted to the grantors or donors, its personal property escheated to the crown, and no recovery could be had on debts owed by or to it. (13 Am. Jur. 1195, 1196.) To avoid the rigor and obvious injustice of these rules, in many of the states in this country statutes have been enacted. Some of these statutes give the corporation a definite time, as two, three, or five years, in which to close up its affairs and use its assets for the benefit of creditors and stockholders; others provide that the directors of the corporation become trustees for these purposes, and apart from such statutes the courts of equity in

this country have applied a "trust-fund" doctrine to the same effect. (13 Am. Jur. 1197. See, also, annotations 47 A. L. R. 1333; 97 A. L. R. 479.) In our state the subject is covered by statutes (G. S. 1935, 17-808, 17-809) which provide, in substance, that upon the dissolution of a corporation, if no receiver is appointed, the last president and directors of the corporation shall be trustees of the creditors and stockholders of the corporation, with power to settle its affairs, collect the debts due it, and pay debts owing by it, and to disburse its net assets among its stockholders, and for this purpose may maintain and defend any judicial proceeding; and such trustees are made severally responsible to such creditors and stockholders to the extent of the property which comes into their hands.

The trustees provided for by these statutes should act as a group, not individually, and should transact the business as trustees, not in the name of the corporation. (*Krutz v. Paola Town Co.*, 20 Kan. 397; Id., 22 Kan. 725.) They have no authority to maintain an action in the name of the corporation, nor to defend an action in its name. (*Kansas Wheat Growers Ass'n v. Markley*, 132 Kan. 156, 294 Pac. 885; *Arkansas River Gas Co. v. Molk*, 135 Kan. 152, 9 P. 2d 623.) They have no authority to execute deeds or contracts in the name of the corporation. (*Investment Co. v. Munson*, 44 Kan. 491, 24 Pac. 977.) Upon the forfeiture of the charter of a corporation it ceases to exist. (*State, ex rel., v. Lawrence Bridge Co.*, 22 Kan. 438; *Razor Co. v. Guymon*, 110 Kan. 745, 205 Pac. 635.) The title to its assets vests in the stockholders. It has no power thereafter to do anything, or to authorize anyone to do things for it. (*MacRae v. Piano Co.*, 69 Kan. 457, 460, 77 Pac. 94.) The situation has been compared to that of the death of an individual whose ability to do things, or to authorize anyone to do things for him, necessarily has ceased. (*MacRae v. Piano Co.*, supra; *Sissell v. Serum Co.*, 108 Kan. 52, 194 Pac. 311; *Young Construction Co. v. Dunne*, 123 Kan. 176, 254 Pac. 323.)

See, also, *Chicago T. & T. Co. v. Forty-One Thirty-Six W. Bldg. Corp.*, 58 Sup. Ct. 125, 127; 13 Am. Jur. 1191 *et seq.*; 14a C. J. 1149 *et seq.*, and cases collected in the annotations in 47 A. L. R. 1288 and 97 A. L. R. 477.

Let us turn now to the second point. Our pertinent statute reads:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; . . ." (G. S. 1935, 52-220.)

This is section 20 of what is commonly known as the uniform negotiable instruments law (abbreviated N. I. L.), which has been adopted with slight modifications in all of the states. It is extensively annotated in Brannan's Negotiable Instruments Law, 6th ed., and in volume 5, Uniform Laws Annotated. The statute does not specifically say that any person who signs for or on behalf of a principal, or in a representative capacity, is personally liable on the instrument if he is not authorized to sign as he does, but that is the necessary implication. In *New Georgia Nat. Bank v. Lippman*, 249 N. Y. 307, 164 N. E. 108; 60 A. L. R. 1344, Chief Justice Cardozo, who wrote the opinion for the court, carefully analyzed this section of the negotiable instruments law and its history and former decisions, and it was there held that while at common law the remedy against an agent signing a note without authority was not on the note itself, but for breach of implied warranty, that this statute changed the rule, and under this section of the negotiable instruments law the agent signing without authority is liable on the note itself.

Beutel, coauthor of the fifth and sole author of the sixth edition of Brannan's Negotiable Instruments Law, in a brief but convincing article in 5 Tulane Law Review, p. 281, considers the liability of one who, without authority to do so, signs a negotiable instrument by or for another. It is pointed out that in some instances the courts have sustained liability in tort, others on an implied warranty of authority, and others have sustained a direct liability on the instrument. The history of such instruments and the purposes to be accomplished by the negotiable instruments law, and particularly by section 20, are considered, and the author concludes by approving the reasoning and conclusions reached in the Lippman case, *supra*. It was said:

"If there is any doubt from the historical evidence of the intention of the framers, that the unauthorized agent is liable in this case, it is settled by an examination of the social interest involved. As pointed out by Judge Cardozo in *New Georgia National Bank v. Lippman*, the intention of the act was to sweep away all the subtleties surrounding the signature of the agent on behalf of his principal, to make the instrument susceptible of easy negotiation, and to protect the holder in due course. This is best accomplished by making the unauthorized agent personally liable on the instrument, for the following reasons: if the courts were to adopt the theory of implied warranty of authority, which is probably a majority and better common-law view of the agent's liability, the warranty under sections 65 and 69 would not run in favor of a remote holder in due course. It is also doubtful if the tort theory

could be extended to protect the holder, especially in those cases where the injury could not be foreseen. The damages, both under the warranty and tort theories, are also doubtful and subject to variation with the particular facts of each case. Holding the agent personally liable on the instrument removes this difficulty of uncertain damages, insures the commercial value of the paper and works for general mercantile convenience." (5 Tulane Law Review, p. 286.)

In 10 C. J. S., p. 449, on bills and notes, it is stated thus:

"One who signs an instrument as representative or agent of a nonexistent or incompetent principal is personally liable thereon."

Such liability, under section 20 N. I. L. (G. S. 1935, 52-220), seems now to be well settled by the authorities. (*Eisinger v. E. J. Murphy Co.*, 285 Fed. 931; *Pain v. Holtcamp*, 10 F. 2d 443; *Hawthorne v. Austin Organ Co.*, 71 F. 2d 945; *Cannon v. Miller Rubber Co.*, 128 Ohio St. 72, 190 N. E. 210; *Carre v. Seaman* [Del.], 190 A. 564; *Catlett v. Hawthorne*, 157 Va. 372, 161 S. E. 47; *Foster v. Featherston*, 230 Ala. 268, 160 So. 689; *Austin, Nichols & Co., Inc., v. Gross*, 98 Conn. 782, 120 A. 596; *Tuttle v. First Nat'l Bank of Greenfield*, 187 Mass. 533, 73 N. E. 560; *Dunham v. Blood*, 207 Mass. 512, 93 N. E. 804; *Trust Co. of N. J. v. Bream*, 11 N. J. Mis. R. 569, 167 A. 163; *Ryan v. Hebert*, 46 R. I. 47, 124 A. 657; *Vorachek v. Anderson*, 54 N. D. 891, 212 N. W. 984; *Clover Leaf Creamery Co. v. Bjornstad*, 168 Minn. 17, 209 N. W. 892; *Burress et al. v. Banks*, 50 Ga. App. 561, 179 S. E. 139.)

Appellant cites the rule that when the payee of a note knows that the one who signs it for another has no authority to do so the signer is not personally liable. (*Southern Supply Co. v. Mathias*, 147 Md. 256, 128 A. 66; *Eliason State Bank v. Montevideo Baseball Assn.*, 160 Minn. 341, 200 N. W. 300; *Loveland v. Hanson*, 172 Wis. 627, 179 N. W. 782.) Attention is called to the allegations of the petition; that the charter of the Connell Oil Company was forfeited by the state charter board for its failure to make its annual report and pay the license fee. It is argued a record of this forfeiture was made by the charter board and kept in its office; that this is a public record, of which plaintiff is bound to have notice at the time the note was executed. We think this argument untenable. It would require every person who has business with a corporation to make inquiry of the state charter board. We have considered the authorities cited by appellant in this connection and find none of them directly in point. More than that, we are here construing a petition in which it is specifically alleged plaintiff did not know at the time

it took the note sued upon that the charter of the corporation had been forfeited, and did not learn that fact until a long time thereafter. We cannot say as a matter of law that plaintiff knew, or should have known, when the note was taken that the charter of the corporation had been forfeited.

The judgment of the court below is affirmed.