NOT DESIGNATED FOR PUBLICATION

No. 113,725

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MIDWEST CRANE AND RIGGING, LLC,
*Appellant*,

v.

FRANK SCHNEIDER and CARLOS GALLEGOS,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed April 8, 2016.
Affirmed.

*Kurt S. Brack*, of Overland Park, for appellant.

*Christopher F. Burger*, of Stevens & Brand, LLP, of Lawrence, for appellees.

Before HILL, P.J., MCANANY and ARNOLD-BURGER, JJ.

*Per Curiam*:  After suing Emcon, Inc. (Emcon), for breach of contract and only recovering under the theory of unjust enrichment, Midwest Crane and Rigging, LLC (Midwest), filed this suit seeking to recover from Carlos Gallegos and Frank Schneider (Defendants), the two field employees who signed the contested equipment rental agreements on behalf of Emcon. Midwest's petition alleged that Defendants committed negligent and intentional misrepresentation resulting in damage to Midwest. In response to the petition, Defendants filed a motion to dismiss arguing that the doctrine of res judicata prohibited Midwest from relitigating claims that had already been decided. The district court granted Defendants' motion to dismiss. Midwest appeals. Finding that the

1

doctrine of res judicata bars Midwest's claims and finding that the doctrine of judicial estoppel is inapplicable because Defendants claims were not inconsistent with Emcon's claims, we affirm. In addition, we deny Defendants request for appellate attorney fees and costs.

## FACTUAL AND PROCEDURAL HISTORY

Midwest filed suit against Emcon for breach of contract or, alternatively, unjust enrichment (Emcon case). The case involved Emcon's agreement to rent cranes from Midwest for a construction project. A dispute erupted over the rental price. After a bench trial, the district court found that there was no meeting of the minds regarding the contract price and denied the breach of contract claim but awarded Midwest nominal damages on the claim for unjust enrichment. Midwest then filed this suit against the two Emcon employees (Defendants) who signed the disputed rental agreements at issue in the Emcon case, alleging negligent and intentional misrepresentation.

Midwest alleged that Defendants each, on different dates, signed hourly rental agreements for Midwest's services and in doing so represented to Midwest that they had the authority to enter into such agreements on behalf of Emcon. As a result of Defendants' representations, Midwest provided labor and equipment to Emcon.

In response to the petition, Defendants filed a motion to dismiss alleging that the suit was barred by res judicata. After a hearing on the matter, the district court granted Defendants' motion. Midwest then filed a motion to alter or amend the district court's order sustaining Defendants' motion to dismiss. After a hearing on the motion, Midwest's request was denied. Midwest now appeals.

Additional facts will be discussed as necessary.

Midwest complains that the district court erred when it found that res judicata barred its claims against Defendants for negligent and intentional misrepresentation and granted Defendants' motion to dismiss.

*Our standard of review is unlimited.*

Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law over which this court exercises unlimited review. When conducting its review, this court must view the well-pleaded facts in the light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state any claim upon which relief can be granted, then dismissal is improper. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013). Whether the doctrine of res judicata applies in a given case is also a question of law over which this court exercises unlimited review. *In re Tax Appeal of Fleet*, 293 Kan. 768, 777, 272 P.3d 583 (2012).

*Res judicata in general*

Res judicata is a judicially created doctrine that bars a plaintiff from relitigating claims against the same defendant that have already been decided. *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015). The purposes of this doctrine are to protect defendants from repetitious litigation and to ensure finality in judicial proceedings. 302 Kan. at 434; *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 397, 949 P.2d 602 (1997). Res judicata will bar a plaintiff from bringing a subsequent suit when each of the following four factors are present: (1) The new claim is the same or arose from the same transaction or occurrence as a claim that has already been litigated; (2) the parties are the same; (3) the claim being asserted in the new litigation was or could have been raised in

3

the prior litigation; and (4) there was a final judgment on the merits in the prior litigation. *Cain*, 302 Kan. at 434; see *Rhoten v. Dickson*, 290 Kan. 92, 107, 223 P.3d 786 (2010) (applying the transactional approach to determine whether new litigation contains the same claim based on federal law); *O'Keefe v. Merrill Lynch & Co.*, 32 Kan. App. 2d 474, 481, 84 P.3d 613 (adopting transactional approach to determine whether state law claims are the same), *rev. denied* 278 Kan. 846 (2004).

*Midwest's claim regarding res judicata*

Although the district court found that each of the four factors was present in this case, Midwest argues that this litigation involves different claims and different defendants than the Emcon case. Midwest also contends that it could not have brought the claims of negligent and intentional misrepresentation against Defendants at the same time it sued Emcon for breach of contract because the causes of action did not ripen until after the district court found no valid contract existed between the parties. According to Midwest, bringing claims against Defendants for misrepresentation at the same time it argued Emcon had breached a valid contract would have been incompatible and would have undermined the breach of contract claim. Not at issue in this appeal is the fourth prong of the res judicata test.

*We review the three challenged elements to the district court's finding that res judicata barred Midwest's claims.*

*Same claim*

The first element that must be present in order for a defendant to prevail on a res judicata affirmative defense is that the claim being brought against it in the current litigation is identical to a claim that was brought against it by the same plaintiff in prior litigation. *Stanfield*, 263 Kan. at 400-01. In *Stanfield*, our Supreme Court utilized the

Restatement (Second) of Judgments §§ 24 and 25 (1980), to guide it in defining the term "claim" for the purposes of res judicata. 263 Kan. at 401. In defining claim, the court explained:

> "'In general, [claim] connotes a natural grouping or common nucleus of operative facts. Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held precluded.' [Citation omitted.]" 263 Kan. at 401.

Grounding a second suit on a different substantive legal theory is insufficient by itself to create a new claim for purposes of res judicata when the factors listed above indicate that the two causes of action should have been brought together. 263 Kan. at 401.

Midwest seems to contest or at least question whether the transaction or occurrence test is the appropriate test to use to determine whether two claims are the same. However, Midwest offers no real alternative to this approach other than to argue that the claims here and in the Emcon case should not be deemed the same because the Emcon case involved contract claims while this suit involves tort claims. While the Kansas Supreme Court may not have adopted the transaction or occurrence test for use in the circumstances presented here, the court has observed that "Kansas law does not appear to differ significantly from the federal law regarding the preclusion doctrines." *Stanfield*, 263 Kan. at 396. Additionally, this court has utilized the transaction or occurrence test. See *O'Keefe*, 32 Kan. App. 2d at 481.

Midwest claims that the district court erred by failing to analyze whether the claims in the Emcon case and the claims it made here against Defendants were related in

5

time, space, origin, or motivation and whether they would have formed a convenient unit for trial purposes. If the district court had engaged in this analysis, Midwest claims that it would have found in favor of Midwest on each factor. Defendants, on the other hand, argue that this case arises from the same: project, location, dates and times, cranes, rate claims, signatures, interactions, and work tickets. Defendants contend that the witnesses that would need to testify in this case are the same as the witnesses that testified in the Emcon case. In addition, the central issue—whether Defendants had the authority to sign contracts binding Emcon—is the same in both cases.

As an initial matter, it is worth noting that the test for whether a new suit involves the same claim as prior litigation is whether the two suits arise from the same transaction or occurrence or, as is often said, share a common nucleus of operative facts. *Stanfield*, 263 Kan. at 401. Whether the two are related in time, space, origin, or motivation and whether they would have formed a convenient unit for trial purposes are factors that guide courts in making this determination. 263 Kan. at 401. However, the doctrine of res judicata "requires a flexible and common-sense construction in order to vindicate its fundamental goals" so courts must conduct "case-by-case analysis that moves beyond a rigid and technical application to consider the fundamental purposes of the rule in light of the real substance of the case at hand." *Cain*, 302 Kan. at 435. In other words, the determination as to whether two claims are the same may be guided by the factors Midwest suggests, but the analysis is not a rigid application of each factor to each case as it seems to imply.

Having made this distinction, it is necessary to examine the claims, arguments, evidence, and testimony from the case against Emcon to determine whether the claims Midwest asserts against Defendants are the same as those involved in the prior litigation. In the Emcon case, Midwest alleged that on "September 9, 2011 and September 30, 2011, Midwest entered into a contract [*sic*] with EMCON whereby Midwest agreed to provided [*sic*] certain labor and equipment for a project titled Sherwood Lake, in Topeka, Kansas."

6

Midwest claimed to have fully performed its obligations under the contracts and complained that Emcon failed to pay the amounts agreed to and was thus in breach. In Count II of the Emcon case petition, Midwest made an alternative claim for unjust enrichment. In response to Midwest's allegation of breach of contract, Emcon raised the affirmative defense that "Plaintiff selected persons without apparent or actual authority to sign off on one-sided adhesion contracts for work to be performed."

In Midwest's opening statement at trial, it claimed that the evidence would show that on two occasions employees of Emcon signed rental agreements that were binding on the company. Emcon was, or should have been, aware of Midwest's practice of presenting employees on the jobsite with such rental agreements based on the companies' 10-year history working together. Midwest argued that Emcon's assertion that its employees did not have the authority to enter contracts on the company's behalf after similar contracts signed by other laborers had been honored was simply an attempt to avoid the terms of the parties' written agreement.

Emcon framed the dispute differently. It claimed that the dispute arose when Midwest attempted to renegotiate the terms of its oral agreement with Emcon by asking laborers on the jobsite to sign adhesion contracts after work was complete. Emcon claimed that these renegotiated agreements were not enforceable and Midwest was bound by its original oral agreement.

Both parties then put on evidence related to the alleged agreements of September 9 and 30, 2011. Gallegos testified that on September 9, 2011, an employee of Midwest presented him with two documents to sign at the end of the work day. The first document Gallegos signed was an hourly crane rental agreement, and the second was a time sheet showing the hours the crane operator had worked that day. Gallegos testified that he did not sign the rental agreement with the intention of renegotiating any previously agreed-upon rates, something he would not have had the authority to do.

7

Schneider similarly testified that he signed an hourly crane rental agreement and time sheet at the end of the day on September 30. Schneider explained that his intention in signing the documents was to verify that the work Midwest had been hired to do had been completed satisfactorily. It was not Schneider's intention to enter into a subcontract with Midwest—something he believed the office had already done prior to Midwest's arrival on the job site. Schneider testified that it is not part of his job to review financial information related to projects or to negotiate prices with subcontractors.

Tony Emerson, Vice President of Emcon, testified that while both Gallegos and Schneider would have had the authority to sign documents verifying the hours that subcontractors were on the job site, neither had the authority to enter into contracts on behalf of Emcon. Additionally, Emerson explained that Emcon refused to pay Midwest for the work it did on September 9 and 30, 2011, because the amounts listed in the rental agreements signed by Gallegos and Schneider differed from the prices he and Midwest had orally agreed to for the work.

William Miller of Midwest testified about some of the details of the contracts that Defendants signed. The rental agreements set the price for the rentals based on the standard rate Midwest was using for the equipment at the time. Near the signature line, the agreements called on the person signing to verify that "'I have read, understood, and agree to the terms and conditions printed on the reverse side hereof and represent I have full authority to accept same and sign this lease.'" Miller further testified that it is the policy of Midwest to have the rental agreements signed after the Midwest crew arrives on a job site and prior to commencing work. If the person presented with and asked to sign the rental agreement were to tell Midwest that he or she did not have the authority to sign such a document, Midwest would not begin work.

In a brief submitted to the court on the day of the trial in the Emcon case, Midwest argued that Emcon should be bound by the agreements signed by Defendants. Midwest

claimed that Defendants, as employees of Emcon, had either actual or implied authority to bind Emcon to the rental agreements. Emcon countered, in a posttrial brief, that an agreement with Midwest had been entered into when it sought and received pricing information from Midwest for use in a construction bid. Emcon maintained that Midwest sought to avoid its agreement by renegotiating with employees who lacked any authority to bind Emcon.

In summation, the litigation between Midwest and Emcon revolved around the two rental agreements signed by Defendants. The arguments presented focused on whether Defendants had the authority to sign such agreements so that they were enforceable. The witnesses were employees of Midwest and Emcon, including Defendants and others involved in contract negotiation, enforcement, and billing with each company.

In this suit, Midwest complained, based on the district court's finding in the Emcon case, that Defendants lacked the authority to enter into contracts on behalf of Emcon and Defendants either intentionally or negligently misrepresented the extent of their authority when they signed the rental agreements. The act that allegedly caused damage to Midwest and gave rise to its claim against Defendants occurred when Emcon refused to abide by the crane rental agreements signed by Defendants—the same event and time at which the breach of contract claim at issue in the Emcon litigation ripened. In this case, as in the last, Defendant's relationships to Emcon would necessarily have been key issues in dispute. The same physical evidence—the crane rental agreements and other documents signed by Gallegos or Schneider—would have been used in both cases to show the extent of Defendants' authority and to prove the representations Defendants made about their authority when they signed. Contrary to Midwest's assertion, the same witnesses that testified in the Emcon case would have been called upon to provide much of the same testimony had this case proceeded to trial. In short, the key events, evidence, and witnesses would have been the same in each case, with the only difference being the legal theory or conclusion that would ultimately be drawn from the evidence. Simply

9

changing the legal theory is not a sufficient distinction to give rise to a new claim for purposes of res judicata. See *Stanfield*, 263 Kan. at 401.

Midwest attempts to create separation between the Emcon case and this suit by arguing that, in part, the damage caused by Defendants occurred not only at the time they signed the rental agreements or at the moment Emcon breached those agreements, but also at trial when Defendants testified that they lacked the authority to contract on behalf of Emcon. Midwest's assertion seems to reflect confusion. The problem giving rise to Midwest's damages was that Defendants signed rental agreements they had no authority from Emcon to sign. At the moments Defendants signed the agreements that contained statements reading "I have read, understood and agreed to the terms and conditions printed on the reverse side hereof and represent that I have full authority to accept same and sign this lease," they, either negligently or intentionally misrepresented that they had the necessary authority. At trial, Defendants testified that they did not have authority to enter into contracts on behalf of Emcon and that if they had realized that the documents they were asked to sign were contracts, they would have made Midwest aware of their lack of authority. There is no indication in the record or Midwest's brief that Defendants did not testify honestly at trial that they were not authorized to enter into contracts on behalf of Emcon, thus there were no misrepresentations made at trial. Midwest's claim exclusively arises from the misrepresentations Defendants made when they signed the crane rental agreements at the job site in 2011.

The claims at issue here arise from the same transaction or occurrence as those at issue in the Emcon case. This prong of the res judicata test has been met.

*Same parties*

Midwest complains that the district court erred when it found that Defendants were in privity with Emcon and subsequently determined that this suit involved the same

10

parties as the Emcon case. While it is widely acknowledged that privity can be a difficult concept to define, the Tenth Circuit Court of Appeals has explained for the purposes of res judicata:

> "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same. [Citation omitted.] Privity has been held to exist in the following relationships: concurrent relationship to the same property right (i.e. trustee and beneficiary); successive relationship to the same property or right (i.e. seller and buyer); or representation of the interests of the same person. [Citation omitted.]" *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989).

Midwest argues that Defendants cannot now claim they were in privity with Emcon when the district court in the Emcon case found that Defendants lacked the authority to bind Emcon to the agreements with Midwest.

In *Lowell Staats Min. Co.*, the Tenth Circuit addressed a procedural challenge similar to that raised in this case. Staats initially sued Pioneer Uravan, Inc. (Uravan), for breach of contract. Staats won the suit but was unable to recover from the company. Staats then filed a second suit against three individuals and five corporations alleging that the defendants committed a variety of torts related to Uravan's breach of contract. One of the individual defendants, Robinson, was an employee of Uravan. He was dismissed from the action after the district court found that res judicata applied to bar the suit against him. On appeal, the Tenth Circuit upheld the dismissal on different grounds, but it determined that if Robinson had been acting in his capacity as an agent of Uravan at the time he committed the acts giving rise to the litigation, then he would have been in privity with Uravan for the purposes of res judicata. 878 F.2d at 1276.

The elements of common-law agency are present in employee-employer relationships. Restatement (Third) of Agency §1.01, Comment (c), p. 19 (2005). There is

11

no dispute here that Defendants were employees of Emcon. Even if an agent lacks actual authority to perform a certain act on behalf of his or her principal, apparent authority may be created when a third party reasonably believes the agent to be authorized to act on behalf of the principal. Restatement (Third) of Agency § 3.03 (2005). In Kansas, an employer (principal) is liable for all acts of his or her employees "if they are committed while the employee is acting in the execution of his [or her] authority and within the course of his [or her] employment, or with a view to the furtherance of his [or her] employer's business, and not for a purpose personal to the employee." *Hollinger v. Stormont Hosp. & Training School for Nurses*, 2 Kan. App. 2d 302, 311, 578 P.2d 1121, *rev. denied* 225 Kan. 844 (1978). Although they may have exceeded the scope of their authority, Defendants were acting as agents of Emcon at the time they signed the agreements with Midwest. As agents acting in furtherance of Emcon's interests rather than their own in the events giving rise to this litigation, Defendants are in privity with Emcon for the purposes of res judicata. See *Lowell Staats Min. Co.*, 878 F.2d at 1276. We pause to note that although in the Emcon case the district court found that Emcon was not bound by Defendants' acts, Midwest did not appeal the district court's judgment in that case. Accordingly, we are not at liberty to review that decision.

Midwest also attempts to defeat Defendants' claim of privity by arguing that allowing the claim of privity is contrary to Kansas law because our Supreme Court has held that "one who signs an instrument as a representative or agent of a nonexistent or incompetent principal is personally liable." *Black, Sivalls & Bryson, Inc., v. Connell*, 149 Kan. 118, 122, 86 P.2d 545 (1939). This argument is misplaced. The *Black* case cited by Midwest is inapplicable to the procedural issue in question here. *Black* involves the liability of the president and principal stockholder of a corporation for contractual agreements he entered into on behalf of the corporation after it was in the process of winding up. *Black* does discuss the personal liability of agents for contracts entered into without authority. See 149 Kan. at 121-22. Moreover, the discussion is only relevant to the question of whether Defendants could have been found liable to Midwest for entering

12

into agreements they lacked authority to execute, not to the issue of whether Defendants are in privity with Emcon for the purposes of this suit.

Because Defendants were agents acting in furtherance of Emcon's interests at the time they signed the rental agreements with Midwest, they are considered to be in privity with Emcon for the purposes of res judicata analysis in this case. The same party prong of the res judicata test has thereby been met.

*Ability of the plaintiff to bring claims at the same time*

Midwest next contends that the district court erred when it found that its claims against Defendants could have been brought at the same time as the suit against Emcon. Midwest's first argument on this point is that its claim against Defendants did not come into existence until the district court found that the contracts they signed on behalf of Emcon were invalid. Although Midwest does not frame it this way, its argument is essentially that it lacked standing to bring the tort suit against Defendants until the district court issued its first ruling.

The two elements of standing that seem relevant to Midwest's argument are injury in fact and ripeness. The injury in fact element requires a plaintiff to show that "'the conduct of which he complains has caused him to suffer an "injury in fact" that a favorable judgment will redress.'" *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 892, 179 P.3d 366 (2008). Ripeness is a doctrine "'designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."' [Citation omitted.] To be ripe, issues must have taken shape and be concrete rather than hypothetical and abstract." 285 Kan. at 892.

Midwest essentially argues that it was injured by Defendants' unauthorized signatures on the rental agreements—not at the time of signing or at the time Emcon

13

refused payment—but at the point that the district court determined that a valid contract had not been formed. Until the district court issued this ruling, Midwest had not in fact been injured and any cause of action it had against Defendants was hypothetical. While this is an interesting argument, it is not convincing.

If Midwest's argument was correct, it would be impossible for plaintiffs to ever plead alternatives to breach of contract such as unjust enrichment, negligence, or, as in this case, fraud or misrepresentation. By Midwest's logic, none of these causes of action would exist prior to the time the disputed contract was deemed invalid by the district court because the plaintiff would not be damaged until the moment recovery was no longer possible under the contract. It is clear that this is not the case.

The issue of alternative pleading was clearly outlined in *Griffith v. Stout Remodeling, Inc.*, 219 Kan. 408, 548 P.2d 1238 (1976). There the plaintiff filed suit against the defendant alleging breach of contract and negligence. At the pretrial conference the district court required the plaintiff to choose which theory she wanted to proceed on rather than letting her develop both. On appeal, our Supreme Court discussed modifications to the rules of civil procedure, including the adoption of K.S.A. 60-208(e)(2) (now K.S.A. 2015 Supp. 60-208[d][3]), which allows a party to assert several different theories of relief, including alternatives that are contradictory. 219 Kan. at 412-13. The Supreme Court concluded that the district court erred when it forced the plaintiff, early in the litigation, to choose between the alternative theories of recovery. 219 Kan. at 413. In a subsequent case, this court clarified that "[w]hatever may have been the law in the past, it now appears settled that in Kansas a person suffering damage from breach of [contract] may proceed upon either a contract or tort theory, or both, in initially framing his [or her] cause of action." *Ware v. Christenberry*, 7 Kan. App. 2d 1, 5, 637 P.2d 452 (1981).

14

It is not necessary to wait to assert alternative theories of recovery, nor is it possible. Res judicata requires that all claims that can be brought together be brought together or they may be barred. *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 400, 949 P.2d 602 (1997) ("Under the doctrine of [res judicata], if a court of competent jurisdiction has entered into a final judgment on a claim, then the parties are bound to every matter determined by the judge, *and to any other admissible matter which might have been offered for that purpose*." [Emphasis added.]).

Midwest next contends that it could not have brought the claim against Defendants in the original suit because it did not become aware that Defendants' authority, or lack thereof, to execute the agreements would be an issue until after the time for amending pleadings had passed. This argument is not persuasive. In Emcon's answer to Midwest's petition, Emcon raised as an affirmative defense: "Plaintiff selected persons without apparent or actual authority to sign off on one-sided adhesion contracts for work to be performed." If Midwest had not been aware of Emcon's position prior to receiving its answer, it was certainly put on notice by the answer. At that point Midwest could have amended its petition to add claims of intentional or negligent misrepresentation, but it chose not to. See K.S.A. 2015 Supp. 60-215(a)(1)(B).

Midwest's final argument is that it would be "contrary to Kansas law" to require a defendant to assert alternative theories that "may directly undermine that party's [primary] theory in the case." Quite the opposite of being contrary to Kansas law, Kansas law requires a party to raise all alternative theories at the same time. See *Stanfield*, 263 Kan. at 400.

Midwest could have brought claims against Defendants for negligent and intentional misrepresentation at the same time it filed suit against Emcon for breach of contract. This prong of the res judicata test has been met.

15

*Conclusion*

All four prongs of the res judicata test—same claim, same parties, claims could have been brought together, and final judgment on the merits—are present here. The district court was correct to find res judicata barred Midwest's suit. Because Defendants raised a complete affirmative defense to the suit, the district court's grant of Defendants' motion to dismiss is affirmed.

APPLICATION OF THE DOCTRINE OF JUDICIAL ESTOPPEL

In its second issue on appeal, Midwest argues that the district court erred when it failed to apply the doctrine of judicial estoppel to prevent Defendants from arguing here that they were in privity with Emcon. Midwest argues that this is contrary to the district court's finding in the Emcon case that the contracts between the parties were invalid because Defendants lacked the authority to sign them. Judicial estoppel works to bar a party from asserting inconsistent positions at different stages of the same or subsequent related litigation. See *New Hampshire v. Maine*, 532 U.S. 742, 749-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 262-63, 261 P.3d 943 (2011) (recognizing that Kansas appellate courts will apply judicial estoppel). The purpose of judicial estoppel is to "'protect the integrity of the judicial process,' [citation omitted], by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" 532 U.S. at 749-50.

Although both parties cite to Kansas cases recognizing use of judicial estoppel in the state, neither has found a Kansas case that sets out the appropriate standard of review. Defendants cite to *United States v. Stevens*, 119 Fed. Appx. 222, 227 (10th Cir. 2004) (unpublished opinion), to advocate for an abuse of discretion standard. In *Stevens*, the Tenth Circuit observed that the majority of the federal circuits have adopted an abuse of

discretion standard of review to the issue of judicial estoppel, although the Sixth Circuit applies a de novo standard. 119 Fed. Appx. at 227.

There is no firm test for the circumstances under which judicial estoppel may be invoked, however, there are several factors courts should consider. "First, a party's later position must be 'clearly inconsistent' with its earlier position." 532 U.S. at 750. Second, the later position should be prohibited only when the party prevailed on the earlier argument. If a court were to permit a party at a later stage to proceed with an argument that was contrary to an argument the party made and prevailed on at an earlier stage, it "would create 'the perception that either the first or second court was misled.'" 532 U.S. at 750. This risk is eliminated if the party did not prevail on the argument in earlier stages of litigation. 532 U.S. at 750-51. Finally, courts should determine whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 532 U.S. at 751.

Defendants argue that this court should decline to consider Midwest's judicial estoppel argument because it did not raise the argument below. It is true that Midwest did not argue Defendants should be judicially estopped from asserting privity with Emcon in its memorandum in opposition to Defendants' motion to dismiss. However, Midwest asserts that it sufficiently raised the issue at the hearing on the motion to dismiss.

At the hearing on the motion to dismiss, Midwest argued:

> "Now the defendant in this case argues that because they were employees of Emcon, that they are in privity with Emcon and, therefore, claim preclusion or issue preclusion apply to bar the claim; in other words, they're talking out of both sides of their mouth. At trial they said they didn't have the authority and couldn't bind the company, now they want to say that they are in privity with the company just by virtue of the fact they're employees. That's directly contrary to the testimony that they gave before this Court in the *Emcon* case.

". . . You can't have it both ways. You can't sit there and argue in the *Emcon* case that they didn't have the authority and they couldn't bind the company; now, on a motion to dismiss, they want to argue the exact opposite, that they are, in fact, in privity with Emcon. Huh-uh, it doesn't work that way. They don't get to do that."

Midwest also addressed the argument briefly at the hearing on its motion to reconsider. There, counsel argued:

"I don't think you can find on the one hand that these folks were not acting in their— within their authority and, yet, on the other hand, on a motion-to-dismiss analysis, find that they were acting within privity. That's what I wanted to point out to the Court.

"I think that, basically, it's kind of almost an estoppel argument, but I don't think you can have it both ways. You can't sit there and say in the *Emcon* case that these folks didn't have authority to do what they did, but, yet, argue that, oh, well, they were for purposes of privity analysis in deciding whether or not the claim is barred by *res judicata*."

Whether these excerpts provide sufficient ground for this court to find that the issue of judicial estoppel was raised below is ultimately of little consequence because Midwest's argument fails on the merits, even under more rigorous de novo review. Midwest argues that Defendants' position that they are in privity with Emcon is completely inconsistent with Emcon's position in the initial litigation that Defendants lacked authority to bind Emcon to contracts. But as already discussed herein, an employee, acting in furtherance of his or her employer's interests, is in privity with his or her employer for the purpose of any disputes that should arise regarding those actions, even if the employee did not have actual authority to act. *Hollinger*, 2 Kan. App. 2d at 311. Because the position of Emcon in the initial litigation and the position of Defendants in this case are not clearly inconsistent, judicial estoppel is not appropriate here.

18

DEFENDANTS' REQUEST FOR ATTORNEY FEES

After oral argument in this matter, Defendants timely filed a request for appellate attorney fees and costs in the amount of $16,948.05. It is well-established that a court may not award attorney fees absent statutory authority or an agreement of the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). Defendants cite Supreme Court Rule 7.07(b) and (c) (2015 Kan. Ct. R. Annot. 72) and K.S.A. 2015 Supp. 60-211(c) as the statutory basis for this court to assess attorney fees. The motion asks this court to find that Midwest's lawsuit was filed for an improper purpose and presented claims Midwest knew to be frivolous. In addition, having notified Midwest of its intention to seek sanctions if its claims were not dismissed, Defendants essentially argue that Midwest's insistence on pursuing its claims is evidence of an intent to harass. But Defendants later in their motion indicate that "Defendants do not opine as to the intent of Plaintiff." Defendants make unsupported claims that Midwest "enjoys a reputation of being unreasonable and hardheaded in litigation," "has a history of pursuing such relatively insignificant sums," and an award of attorney fees is necessary "for messaging purposes, but Defendants do not opine as to the amount." However, Defendants conclude by requesting a total of $16,948.05 in costs and attorney fees. Defendants did not request attorney fees and costs before the district court when faced with the same claims.

Midwest may have the reputation alleged and its decision to pursue this case against two field employees does seem to this court to be particularly harsh, but Defendants bear the burden of proof and there is insufficient evidence in the record to support a finding that the claims were knowingly frivolous or filed and maintained with a clear intent to harass. Accordingly, Defendants' request for appellate attorney fees and costs is denied.

The decision of the district court dismissing this action is affirmed.

19

Affirmed.